IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CAROLYN A. FRASIER,               )    CIVIL ACTION NO. 9:10-2806-BM
                                  )
                                  )
            Plaintiff,            )
                                  )
v.                                )         **ORDER**
                                  )
MICHAEL J. ASTRUE,                )
COMMISSIONER OF SOCIAL            )
SECURITY ADMINISTRATION,          )
                                  )
            Defendant.            )
_____ )

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the final decision of the Commissioner wherein she was denied disability benefits.

Plaintiff applied for Disability Insurance Benefits (DIB) on October 15, 2007 (protective filing date),

alleging disability as of September 29, 2007 due to a arthritis, depression and anxiety, high blood

pressure, asthma, gastric problems, headaches, irritable bowel syndrome, and gastroesophageal

reflux disease (GERD).  (R.p. 142).

Plaintiff's claim was denied initially and upon reconsideration.  Plaintiff then

requested a hearing before an Administrative Law Judge (ALJ), which was held on December 9,

2009.  (R.pp. 35-73, 120-122).  The ALJ thereafter denied Plaintiff's claim in a decision issued

December 18, 2009. (R.pp. 15-29).  The Appeals Council denied Plaintiff's request for a review of



the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner.  (R.pp. 1-5).

Plaintiff then filed this action in United States District Court.  Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further proceedings or for an award of benefits.  The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980).  If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision.  Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642.  "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court



disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was fifty-eight (58) years old when she alleges she became disabled, has a high school education with some college class work, and past relevant work as a nurse. (R.pp. 27, 40, 143). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[1] of osteoarthritis, obesity, degenerative disc disease, and irritable bowel syndrome (IBS), rendering her unable to perform her past relevant work, she nevertheless retained the residual functional capacity (RFC) to perform a restricted range of light work,[2] and is therefore not entitled to disability benefits. (R.pp. 17, 21, 27).

Plaintiff asserts that in reaching this decision, the ALJ erred by failing to follow the requirements of SSR 96-8(p) in considering the combined effects of all of Plaintiff's impairments on her ability to work (including both severe and non-severe impairments), by failing to designate

---

[1]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



some of Plaintiff's impairments as either severe or non-severe, by failing to properly consider and evaluate Plaintiff's obesity, by failing to properly evaluate Plaintiff's mental impairment and failing to find that this impairment was severe, by finding that Plaintiff retained the RFC for light work, and by posing an improper hypothetical to the Vocational Expert which did not include all of Plaintiff's limitations.   However, after careful review and consideration of the evidence and arguments presented, the Court finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision must therefore be affirmed.

## I.

## (Medical Record)

The medical record reflects that Plaintiff has complained about many of the conditions she now asserts are disabling as far back as 2003.  (R.pp. 210-239, 241-272, 274-283). Plaintiff's medical records prior to her disability onset date are replete with notations showing where Plaintiff missed appointments, failed to comply with treatment, and indicating that Plaintiff was exaggerating her symptoms.  See (R.pp. 219, 241-242, 299-300, 324-326, 375).  Even after Plaintiff contends her impairments became disabling, treating physician Dr. Jeffery Hatchell noted on October 10, 2007 that, even though Plaintiff was complaining of severe abdominal pain, it "didn't stop her from going to the flea market, Sams, and Belk."  (R.p. 297).  At a followup visit on October 26, 2007, Dr. Hatchell noted that when he asked Plaintiff why she was applying for disability, she "gives many reasons, none of which really make sense."  Plaintiff's examination that day was essentially normal.  (R.p. 295).

While Plaintiff does not herself claim that her impairments became disabling until



September 29, 2007, she testified at the hearing that she essentially stopped working over a year and a half earlier, in February 2006. (R.p. 41). On December 17, 2007, Plaintiff completed a Function Report for the Social Security Administration in which she stated that she was often in a depressed mood and that her mobility was "greatly impaired". However, she also indicated that she did not need any special reminders to take care of her personal needs and grooming or to take medicine, and although she did not prepare her own meals, she was able to sort and load laundry, was able to drive a car, and did some shopping. Nevertheless, Plaintiff stated that a variety of physical problems and difficulties in concentration prevented her from being gainly employed. (R.pp. 150-157). On that same day, Dr. Hatchell completed a questionnaire in which he opined that Plaintiff was capable of managing her own funds and did not have any work related limitation and function due to a mental condition. (R.p. 311).

Plaintiff was apparently seen at the Pee Dee Mental Health Center for a clinical assessment in either January 2008 or October 2008 (both dates are on the assessment form - see (R.pp. 313, 320)). Plaintiff complained that her depression was not being treated, and that she wanted to be "declared disabled." A review of this assessment form indicates that an assessment was made based on the attending clinician's observations of the Plaintiff, with the only observations recorded being that Plaintiff was alert, was usually able to make sound decisions, and that she blamed others for her problems, but that she had an average fund of knowledge, was able to concentrate, and had an intact memory. Notwithstanding these unremarkable findings, however, the attending clinician assigned Plaintiff a GAF of 40,[3] apparently based on Plaintiff's self-reported

---

[3]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and
(continued...)



description of her mental state. (R.pp. 313-320).

Plaintiff was seen by Dr. Amanda Sommerfeld at Dr. Hatchell's office on January 25, 2008 complaining of a headache. Dr. Sommerfeld found "no abnormalities on complete neurological exam", and advised Plaintiff that the headaches she was having were "rebound" headaches from overuse of over the counter analgesics. Dr. Sommerfeld recommended that Plaintiff limit her use of these products, a recommendation to which Plaintiff was "very resistant", so Dr. Sommerfeld told Plaintiff that she was "more than welcome to seek another opinion or reject [her] advice." (R.pp. 324-326). Plaintiff then returned to see Dr. Hatchell a few weeks later, on February 11, 2008, where it was noted that Plaintiff's IBS was stable and that her headaches had "improved significantly". On examination Plaintiff was described as obese but with no significant physical findings. She was also found to be alert and oriented x 3. Plaintiff complained of chronic abdominal pain and bloating helped by medications; anxiety and insomnia (for which she used Zanex "occasionally"), and "occasional vague myalgias in [her] arms and legs . . . ." (R.pp. 322-323).

Plaintiff had a consultative orthopedic examination performed on February 25, 2008 by Dr. George Dawson. Plaintiff told Dr. Dawson that her chief complaint was with her low back, knees and hands. Plaintiff told Dr. Dawson that she had had aching and pain in her hands since 2005, and had suffered from low back pain for six or seven years. On examination Plaintiff was found to be 5 foot 2 inches and weigh 232 pounds. Plaintiff stood and walked normally, performed

---

[3](...continued)
occupational functioning of a patient." <u>Morgan v. Commissioner of Soc. Sec. Admin.</u>, 169 F.3d 595, 597 n.1 (9th Cir. 1999). "A GAF score of 31-40 indicates 'some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood.'" <u>Kirves v. Callahan</u>, No. 96-5179, 1997 WL 210813 at **2 (6th Cir. Apr. 25, 1997).



half a squat, there was no tenderness in the lower lumbar spine, and there was no effusion or instability noted in the knees. Plaintiff complained of low back pain when bending forward to touch her ankles, and restrictions in her hip rotation were noted. X-rays were taken of the Plaintiff's lumbar spine, which showed a small interior superior osteophyte at L4, some L4-5 lateral osteophytes, and reasonable veritable body heights and disc spaces. X-rays of the knees showed reasonable joint space in the left knee with intercondylar osteophytes on standing x-ray, while the right knee had intercondylar osteophytes and lateral osteophytes and "perhaps" slight lateral joint space narrowing, as well as anterior and posterior osteophytes at the femur. Dr. Dawson diagnosed Plaintiff with osteoarthritis of the right and left knee, worse on the right; degenerative disc disease of the lumbar spine at L3-4 and 4-5; and history of intermittent arthralgia at the fingers of both hands. (R.pp. 327-330).

On March 5, 2008 State Agency Psychologist Dr. Edward Waller reviewed Plaintiff's records and opined that Plaintiff did not have a severe mental impairment. Dr. Waller concluded that her current dysthymia[4] resulted in no restriction in Plaintiff's activities of daily living, only mild difficulties in maintaining social functioning and concentration, persistence or pace, with no episodes of decompensation. (R.pp. 331-343). On March 24, 2008 State Agency Physician Dr. Ellen Humphries reviewed Plaintiff's medical records and opined that Plaintiff had the physical RFC for medium work[5] with no limitations. (R.pp. 345-352).

---

[4]Dysthymia is a mild, but chronic, form of depression. Dysthymia symptoms usually last for at least two years, and often for much longer than that. http://www.mayoclinic.com/health/dysthymia/DS01111, Aug. 26, 2010.

[5]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying
(continued...)



Plaintiff returned to see Dr. Hatchell on May 12, 2008 complaining of vaginal discharge and itching.  On examination there was no change in Plaintiff's condition from her previous visits, with Dr. Hatchell particularly noting that Plaintiff's spine had normal curves, was non-tender with no spasm noted, no deformity/swelling/erythema of the shoulders/elbows/wrists/fingers/knees/ankles, and that she was alert and oriented x 3.  (R.pp. 354-355).  Plaintiff thereafter returned to see Dr. Hatchell on July 9, 2008 complaining of dyspepsia,[6] but on examination was again found to be alert and oriented x 3.  Dr. Hatchell described Plaintiff as anxious and "fixated" on her perceived disabilities, which was his usual notation regarding this complaint.  (R.pp. 380-381).  Plaintiff returned to see Dr. Hatchell again on July 30, 2008 after reading an article in a magazine about chronic pain.  Plaintiff had called a different physician to see if he handled chronic pain, who apparently referred Plaintiff back to Dr. Hatchell.  Plaintiff told Dr. Hatchell on this visit that she had long standing pain in her back, fingers, and head, with "random flighting pains over the rest of her body lasting only a very short while."  A review of Plaintiff's systems and a physical examination were both unremarkable, and Dr. Hatchell diagnosed Plaintiff with chronic pain syndrome.  (R.pp. 375-376).

On July 17, 2008 Plaintiff went to see Dr. Mark Hucks complaining of vaginal discharge.  Dr. Hucks noted that Plaintiff was on multiple medications.  Plaintiff denied having any

---

[5](...continued)
of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[6]Dyspepsia can be defined as painful, difficult, or disturbed digestion, which may be accompanied by symptoms such as nausea and vomiting, heartburn, bloating, and stomach discomfort. http://medical-dictionary.thefreedictionary.com/dyspepsia, April 23, 1998.



fatigue, headaches or dizziness, leg pain/swelling or dyspnea[7] on exertion; any joint swelling, joint/back pain, or stiffness; and denied feeling worried, anxious or depressed. A physical examination was essentially normal (Plaintiff weighted 239 pounds), and a urinalysis was negative. Plaintiff was assessed with vaginal discharge consistent with candida, urinary incontinence, stress, and unlikely urge incontinence. (R.pp. 389-390). Plaintiff returned to see Dr. Hucks on April 4, 2008 for "simple cystometrics." Plaintiff underwent this procedure, following which Plaintiff was assessed with mixed urinary incontinence and fecal incontinence. Both medical and surgical management was recommended to correct these problems. (R.pp. 387-388).

On August 11, 2008, State Agency Psychologist Dr. Lisa Klohn reviewed Plaintiff's medical records and reached the same conclusions with respect to Plaintiff's alleged mental impairment as had Dr. Waller. (R.pp. 359-371).

On September 9, 2008 Plaintiff was seen by Dr. Kerry Hammond with MUSC on referral from Dr. Hucks for consultation regarding colon and rectal surgery. Plaintiff described some episodes of fecal incontinence and stated that she also had urinary incontinence that varied in frequency. Plaintiff also complained of frequent abdominal cramping. However, on examination Plaintiff was found to be in no acute distress, her abdomen displayed no tenderness or palpable masses, and her anorectal exam was essentially normal. Plaintiff was assessed with IBS and stool leakage/incontinence, which Dr. Hammond opined was related to her IBS. While Plaintiff was on a fiber regimen, Dr. Hammond noted that she had not been formally treated for her condition. Dr. Hammond increased Plaintiff's fiber supplement, and encouraged her to incorporate high fiber foods

---

[7] Difficult or labored breathing; shortness of breath. http://www.medterms.com/script/main/art.asp?articlekey=3145, April 27, 2011.



into her diet and to drink plenty of water.  He further recommended that Plaintiff return to see him in a couple of months, at which time he would reassess her response to medical therapy and, if she did not have any change in her symptoms, order a ultrasound and psychologic testing.  (R.p. 393).

Plaintiff thereafter apparently had a follow-up with Dr. James Mann on October 22, 2008.  Dr. Mann had seen Plaintiff in August 2007 and recommended that she have a colonoscopy, which Plaintiff had declined.  On examination Plaintiff was found to be alert and in no distress; her abdomen was non-tender and non-distended with normal bowel sounds; while her extremities were well-perfused with no edema.  Dr. Mann arranged for a colonoscopy to be performed, and opined that Plaintiff suffered from constipation-predominate IBS.  He recommended that Plaintiff continue her fiber regimen.  (R.p. 395).  Dr. Mann thereafter performed a colonoscopy on November 26, 2008, which revealed a healthy, normal colon.  Plaintiff was assessed with poor anal sphincter tone, otherwise normal colonoscopy.  (R.p. 397).

Plaintiff was also seen again by Dr. Dawson on November 10, 2008 with complaints of left knee pain.  Dr. Dawson noted that he had previously diagnosed Plaintiff with osteoarthritis of both knees.  On examination Plaintiff's left knee motion was 0 to 98 degrees flexion, while right knee motion was 3 degrees to 125 degrees flexion.  There was no gross medial, lateral or AP instability of the left knee.  Plaintiff was diagnosed with possible internal derangement of the left knee and was scheduled for an MRI.  (R.p. 487).  The MRI was performed on November 18, 2008, which revealed normal appearing menisci.  The collateral and cruciate ligaments were intact, with two ganglion cysts being noted as well as chondromalacia involving the mid pole of the patella superiorly.  (R.p. 487).

On December 10, 2008, Plaintiff voluntarily admitted herself to Palmetto Low



10

Country Behavioral Health complaining of severe mood issues and psychosis. Plaintiff's laboratory findings on admission were indicative of chronic anemia, but were otherwise within normal limits. Plaintiff complained about a variety of family issues, and she was placed on Abilify and Lamictal. Plaintiff was subsequently discharged on December 16, 2008 in stable condition with a good prognosis and a GAF of 55.[8] (R.pp. 398-400). On the same date of Plaintiff's discharge from Palmetto Low Country Behavioral Health she was notified by FirstChoice HealthCare that her lab results indicated that she probably had a reactivation of mononucleosis, which could cause excessive fatigue for a couple of months. All of Plaintiff's other lab results were normal, and Plaintiff was advised to take a multivitamin and rest when she felt tired. (R.p. 507).

Plaintiff then presented to FirstChoice HealthCare on December 19, 2008 complaining of a headache. A physical exam was performed which was essentially normal, and Plaintiff was prescribed with some medications. (R.pp. 505-506). Plaintiff was seen again at FirstChoice HealthCare on January 5, 2009 for a follow-up evaluation, at which time she indicated that she would like to try something to help her lose weight. Plaintiff was noted to have a normal activity and energy level, with no fatigue or general feeling of being ill. (R.pp. 503-504).

Plaintiff was seen again by Dr. Dawson on March 13, 2009, who noted that since Plaintiff's last visit she had been to FirstChoice HealthCare and placed on Voltaren, which "definitely helped the pain at the front of both knees." Dr. Dawson noted that Plaintiff walked normally and at good speed with "maybe a little discomfort at her right knee on Patella Grind test."

---

[8] A GAF of 51 to 60 indicates that only moderate symptoms are present. Perry v. Apfel, No. 99-4091, 2000 WL 1475852 at *4 (D.Kan. July 18, 2000); Matchie v. Apfel, 92 F.Supp.2d 1208, 1211 (D.Kan. 2000).



On examination Plaintiff's right knee motion was 0 to 125 degrees flexion, and her left knee motion was 2 degrees to 130 degrees flexion.  There was no definite effusion of the left knee and no pain on left Patella Grind test.  Plaintiff had a "little" hip ache on both sides, but it was noted that when she first stepped up and down on a stool it did not bother her, while after 2 to 3 steps it ached "a little" at the front of both kneecaps.  Dr. Dawson noted the results of Plaintiff's x-rays from November 2008, and instructed Plaintiff to return in six months "or sooner if needed".  (R.p. 489).  Plaintiff then returned to FirstChoice HealthCare on April 15, 2009, where she had an essentially normal physical examination, including notations that she had an intact gait with a normal station and posture; an appropriate mood and affect; and normal attention and concentration.  Plaintiff was instructed to return in three months.  (R.pp. 492-493).

Plaintiff was seen by cardiologist Dr. Alan Blaker on April 28, 2009 for an evaluation.  Plaintiff complained of occasional sharp left back and left chest pain.  On examination Plaintiff was found to be overweight but in no obvious distress, while otherwise her physical examination was essentially normal.  Dr. Blaker assessed Plaintiff with mild hypertension with atypical chest pain, and multiple risk factors for coronary disease.  (R.pp. 516-517).  On May 15, 2009, Plaintiff was again seen by Dr. Blaker, apparently as a result of an abnormal EKG.  Only minimal findings were noted, however, with a stress test administered by Dr. Prabal Guha revealing a normal wall motion with normal ejection fraction, with a possible mild anterior ischemia.  (R.pp. 514-515).

Plaintiff was also seen during 2009 at Pee Dee Mental Health.  (R.pp. 519-528).  While most of these records are indecipherable, an office note signed by Dr. James Mazgaj on April 23, 2009 noted that Plaintiff was going to FirstChoice and had seen a cardiologist.  Plaintiff was



noted to be talkative, lacking in motivation, and crying in the office.  Plaintiff was using Zanex, but was reluctant to try Ambien.  Plaintiff was continued on Lamictal, with a notation that she might consider group therapy.  (R.p. 522).  On May 8, 2009, Dr. Mazgaj noted that Plaintiff was complaining about bad dreams and various family issues.  Plaintiff was described as being a "motor mouth", became tearful discussing her issues, and was noted to be overly sensitive at times.  (R.p. 521).  On July 28, 2009 Dr. Mazgaj noted that Plaintiff was doing "fair", and that she was "depressed by self-report".  Plaintiff reported taking "tiny doses of Zanex".  (R.p. 520).  On August 28, 2009 Dr. Mazgaj again noted that Plaintiff was doing "fairly well", although she seemed "neurotic".  (R.p. 519).

Finally, Plaintiff was also seen at HopeHealth in 2009.  Plaintiff was noted on various examinations to be suffering from arthritic changes of the left knee with tenderness of the hip joint, but she otherwise had essentially normal objective findings on examination.  (R.pp. 531, 535, 541-542, 547).

## II.

### (ALJ's Findings and Decision)

After review of this evidence and consideration of Plaintiff's subjective testimony as to the extent of her pain and limitations, the ALJ determined that Plaintiff complaints of depression, including post traumatic stress disorder (PTSD) and general anxiety disorder, as well as her physical complaints of hypertension, history of hypokalemia, gastroesophageal reflux disease, allergic rhinitis, and asthma, were all managed with appropriate care and treatment, failed to produce more than a minimal effect on Plaintiff's ability to perform basic work activities, and therefore did not qualify as severe impairments.  (R.pp. 18-20).  In making this finding, the ALJ determined that Plaintiff's



medically determinable mental impairments caused no more than mild limitations in any area of functioning, with no episodes of decompensation. Plaintiff's osteoarthritis, obesity, degenerative disc disease, and IBS were found to be severe impairments. Then, considering all of Plaintiff's symptoms consistent with the objective medical evidence and other evidence, the ALJ determined that, notwithstanding her impairments, Plaintiff retained the residual functional capacity to perform light work that required no more than occasional kneeling or crouching; no work around dangerous heights or hazardous machinery; no climbing or balancing; and no operation of automobiles or automotive type equipment. (R.pp. 17-18, 21).

Plaintiff argues that in reaching his decision, the ALJ failed to properly consider the limiting effects of all of her impairments, and reached an improper RFC finding based on the evidence. However, after review of the decision and the record in this case, the Court does not find that the ALJ conducted an improper analysis, or that his decision otherwise reflects a failure to consider the effect Plaintiff's impairments had on her ability to work. Bowen v. Yuckert, 482 U.S. 137, 146, n. 5 (1987)[Plaintiff has the burden to show that she has a disabling impairment]; Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964) [court scrutinizes the record as a whole to determine whether the conclusions reached are rational].

### III.

### (Mental Impairment)

As part of her argument, Plaintiff contends that the ALJ erred by finding that her mental impairment was non-severe, primarily citing to the Records from Pee Dee Mental Health, Palmetto Behavioral Health, and FirstChoice HealthCare to support her claim that she has a severe mental impairment. However, in reaching his decision, the ALJ specifically noted the records from



FirstChoice showing that Plaintiff exhibited a normal level of activity with appropriate energy and no fatigue in finding that Plaintiff had no limitation in her activities of daily living; the records from Pee Dee Mental Health showing that Plaintiff maintained good concentration and memory in finding that Plaintiff had no limitation in the area of concentration, persistence or pace; and the records from Palmetto Lowcountry Health showing that Plaintiff's voluntary commitment in December 2008 failed to show an episode of decompensation. (R.pp. 20-21, 319, 398-400, 503-504). See Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988) [A mental impairment diagnosis is insufficient, standing alone, to establish entitlement to benefits.]; see also Lee v. Sullivan, 945 F.2d 687, 693-694 (4th Cir. 1991)[denial of benefits affirmed where physicians who examined claimant and heard all of his complaints failed to give an opinion that he was totally and permanently disabled].

The ALJ also referenced the records of treating physician Dr. Hatchell that Plaintiff's alleged mental impairment resulted in no limitations, the medical records showing that Plaintiff tended to over exaggerate her symptoms, Dr. Mazgaj's comments that Plaintiff was doing "fairly well", that Plaintiff herself indicated that she engaged in a variety of activities, the fact that Plaintiff's mental health treatment records contained significant "gaps", and that even Dr. Hatchell expressed skepticism concerning Plaintiff's condition in light of her pursuit of disability benefits. (R.pp. 20-21, 24-26, 152-153, 180, 219, 241, 299-300, 311, 324-326, 375). See Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996)[noting importance of treating physician opinion]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessments of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; Mickles v. Shalala, 29 F.3d 930 (4th Cir. 1994)[lack of treatment inconsistent with complaints of disabling symptoms]; Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003)[Evidence that a claimant is exaggerating symptoms can



be considered as part of the evaluation of Plaintiff's subjective complaints].  It is further noted that the State Agency Physicians who evaluated Plaintiff's alleged mental impairment both found that this condition was non-severe and resulted in, at most, only mild limitations.  (R.pp. 27, 341, 369). See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].

This record provides substantial evidence to support the ALJ's finding that Plaintiff's mental impairment was non-severe.  Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; see Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ["[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss"].

## IV.

## (Obesity)

Plaintiff also complains that the ALJ did not properly evaluate her obesity, specifically noting that SSR 02-01p indicates that obesity can result in a variety of functional limitations, including postural limitations, fatigue and an inability to function over time.  However, in addition to finding that Plaintiff's obesity was a severe impairment, the decision reflects that the ALJ also addressed the functional limitations that can be affected by this condition in reaching his decision.

Specifically, the ALJ noted that Plaintiff is able to ambulate, that although Plaintiff used a cane such usage had never been prescribed by a physician, that Dr. Dawson noted that Plaintiff could walk normally and perform at least a half squat with no tenderness in the lower back and no effusion in the knees or instability in the lower extremities, that Plaintiff was treated



16

conservatively, that FirstChoice HealthCare's records from January 2009 showed Plaintiff exhibited a normal activity level with no fatigue, and that Plaintiff herself described a level of physical activity inconsistent with a disabling limitation.  (R.pp. 20, 22-23, 25-26, 152-153, 180, 311, 503-504).  All of these conditions address the possible limiting effects of Plaintiff's obesity.  Bowen, 482 U.S. at 146, n. 5 [Plaintiff has the burden to show that she has a disabling impairment]; cf. Fagan v. Astrue, 231 Fed.Appx. 835, 837-838 (10th Cir. July 3, 2007).  Plaintiff's argument that the ALJ failed to properly consider her obesity is reaching his decision is without merit.

## V.

### (RFC Determination)

In reaching his RFC finding, the ALJ reviewed and discussed all the medical evidence as well as Plaintiff's testimony as to the extent of her pain and limitation.  A review of the decision further shows that, in discussing all of Plaintiff's impairments and the medical evidence, the ALJ specifically considered the effect the combination of these impairments would have on Plaintiff's ability to work, including both Plaintiff's severe and non-severe impairments.  (R.pp. 20, 22, 27). The Court can discern no reversible error in this analysis.

The ALJ noted the medical evidence showing that Plaintiff's mental impairments do not cause more than a minimal limitation in Plaintiff's ability to perform basic mental work activities.  Foster, 853 F.2d at 489  [A mental impairment diagnosis is insufficient, standing alone, to establish entitlement to benefits.].  The ALJ also discussed Plaintiff's other medical records showing that she could walk normally, had minimal findings on x-rays, a lack of instability in her lower extremities, that she could walk 100 hundred feet equally well with or without the assistance of a cane, that Plaintiff received only conservative care for her complaints, and that Plaintiff



17

exhibited a normal level of activity.  See (R.pp. 219, 241, 299-300, 311, 324-325, 503-504).  See

generally, Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["The mere fact that working may

cause pain or discomfort does not mandate a finding of disability"]; Robinson v. Sullivan, 956 F.2d

836, 840 (8th Cir. 1992)[Generally conservative treatment not consistent with allegations of

disability]; Gaskin v. Commissioner of Social Security, 280 Fed.Appx. 472, 477 (6th Cir.

2008)[Finding that evidence of no muscle atrophy and that claimant "possesses normal strength"

contradicted Plaintiff's claims of disabling physical impairment].   The ALJ noted that Dr.

Sommerfeld found Plaintiff's IBS to be stable while this complaint was not even discussed with Dr.

Dawson during his consultative examination in February 2008, that Plaintiff's gastric problems were

primarily treated with a fiber diet while a colonoscopy was essentially unremarkable, and that from

the end of 2008 through November 2009, the records from Plaintiff's various primary care providers

showed that Plaintiff lodged very few complaints with regard to her bowel related symptoms.  (R.pp.

21-23).  See Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that the objective

medical evidence, as opposed to the claimant's subjective complaints, supported an inference that

he was not disabled]; Thomas, 331 F.2d at 543[court scrutinizes the record as a whole to determine

whether the conclusions reached are rational].  The ALJ also again pointed out Plaintiff's history of

exaggerating her symptoms.  Jenkins v. Bowen, 861 F.2d 1083, 1086 (8th Cir. 1988)[ALJ may

consider evidence that a claimant has exaggerated his symptoms].  The Court can find no error in

the ALJ's review and consideration of this evidence.  See Hays, 907 F.2d at 1456 [It is the

responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].

        In discounting Plaintiff's subjective testimony the ALJ considered the entire case

record, noting inconsistencies between her testimony and the objective medical evidence as well as



18

Plaintiff's description of the level of her activity, including that she drove, performed household chores, went shopping and visited friends, and spent time performing mental activities requiring persistence and concentration.  (R.pp. 25-26, 152-153, 180, 219, 503-504).  This record does not show that the ALJ improperly evaluated Plaintiff's subjective testimony, nor does it support a finding that the ALJ's RFC determination is not supported by substantial evidence.  Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; Mickles, 29 F.3d at 925-926 [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; Jolley, 537 F.2d at 1181 [finding that the objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987)[ALJ is entitled to observe the Plaintiff, evaluate her demeanor, and consider how the Plaintiff's testimony fits with the rest of the evidence].

The ALJ's review, discussion and analysis of the record and evidence as set forth in his decision also satisfies the requirements of SSR 96-8p; cf. Roberts v. Masanari, 150 F.Supp.2d 1004, 1010 (W.D.Mo. 2001); Buchholtz v. Barnhart, 98 Fed.Appx. 540, 547 (7th Cir. 2004); Delgado v. Commissioner of Social Serv., 30 Fed.Appx. 542, 547-548 (6th Cir. 2002); and Plaintiff's argument that the ALJ should have gone into even greater detail with respect to his findings is therefore without merit. Dryer v. Barnhart, 395 F.3d 1206, 1211( 11th Cir. 2005) [ALJ not required to specifically refer to every piece of evidence in the decision]; Rogers v. Barnhart, 204 F.Supp.2d 885, 889 (W.D.N.C. 2002). See also Osgar v. Barnhart, No. 02-2552, 2004 WL 3751471 at *5 (D.S.C. Mar. 29, 2004), aff'd; Knox v. Astrue, 327 Fed.Appx. 652, 657 (7th Cir. 2009)["[T]he



expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient"], citing <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005); <u>cf</u>. <u>Lee</u>, 945 F.2d at 692 [ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record].

In sum, the decision reflects that the ALJ properly reviewed all of the evidence in determining Plaintiff's RFC. <u>Hays</u>, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; <u>see also</u> <u>Clarke v. Bowen</u>, 843 F.2d 271, 272-273 (8th Cir. 1988)["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts"].  The ALJ's finding that Plaintiff could perform light work with the restrictions noted is supported by substantial evidence in the case record, and is therefore hereby affirmed.  <u>English v. Shalala</u>, 10 F.3d 1080, 1084 (4th Cir. 1993) [finding that substantial evidence supported the ALJ's conclusion that the claimant was physically capable of limited light work despite his multiple impairments; case remanded on other grounds]; <u>Hunter v. Sullivan</u>, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints].

## VI.

### (VE Hypothetical)

Finally, the record reflects that a Vocational Expert testified at the hearing, and in response to a hypothetical from the ALJ which included all the limitations found by the ALJ, the VE identified several jobs Plaintiff could perform with those limitations. (R.pp. 66-69).  Plaintiff argues that the VE's testimony is flawed because the ALJ failed to include in his hypothetical all of the



Plaintiff's limitations.

However, while Plaintiff may disagree with the findings of the ALJ, the Court has previously concluded that these findings are supported by substantial evidence in the record as that term is defined in the applicable case law.  Hence, the hypothetical given by the ALJ to the vocational expert was proper, and the Court finds no grounds in the ALJ's treatment of the vocational expert's testimony for reversal of the final decision of the Commissioner.  Lee, 945 F.2d at 692 [ALJ not required to include limitations or restrictions in his hypothetical question that he finds are not supported by the record]; see also Martinez v. Heckler, 807 F.2d 771, 773 (9th Cir. 1986).

## Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision.  Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period.  Therefore, it is **Ordered** that the decision of the Commissioner is **affirmed**.

21



**IT IS SO ORDERED**.

_____
Bristow Marchant
United States Magistrate Judge

November 28, 2011
Charleston, South Carolina

**The parties are hereby notified that any right to appeal this Order is governed by Rules 3 and 4 of the Federal Rules of Appellate Procedure.**

